UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

| | |
|---|---|
| DANNY GRAY #240062, | ) |
| Plaintiff, | ) Case No. 2:05-cv-29 |
| v. | ) HON. GORDON J. QUIST |
| PATRICIA CARUSO, et al., | ) |
| | ) **OPINION** |
| Defendants. | ) |

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) ("PLRA"), the court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A.  The court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 595 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33, 112 S. Ct. 1728, 1733 (1992). Applying these standards, the court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.      Factual Allegations

Plaintiff Danny Gray, an inmate at the Marquette Branch Prison (MBP), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants MDOC Director Patricia Caruso, MDOC Deputy Director Dennis Straub, Unknown Party named as Dr. John Doe, Dr. Wemer, Officer M. Snider, MDOC Hearings Administrator Richard Stapleton, R. Rider, S. Watson, Warden Jerry Hofbauer, Security Classification Committee (SCC) Member Robert Napel, SCC Member M. Catherine Aalton, SCC Member Jim Alexander, SCC Member Jim Trethewey, and Resident Unit Manager P. Person.

Plaintiff alleges that he was found guilty but mentally ill of assault with intent to murder in 1994. On March 2, 2002, Plaintiff was written three major misconduct tickets and was placed in temporary segregation. Plaintiff's misconduct hearings were adjourned so that Plaintiff could receive a mental health evaluation. Plaintiff was transferred to the Huron Valley Center (HVC) for this evaluation. During this time, Plaintiff was described as being irrational, unable to engage in meaningful dialogue, and unable to cooperate with interview attempts. When Plaintiff arrived at HVC, he was placed in four point ambulatory restraints, confined to seclusion, and given antipsychotic medication pursuant to the recommendations of mental health staff. On March 11, 2002, Plaintiff was diagnosed as suffering from serious mental illness.

Plaintiff asserts that pursuant to MCL §§ 768.36(3), 330.2003 and 330.2001a, the MDOC is required to provide him with needed psychiatric treatment. Plaintiff alleges that on March 19, 2002, he was involuntarily admitted to a crisis stabilization unit under the corrections mental health program. Plaintiff's clinical course was described by Dr. Vincent E. Pernell as being

unremarkable and uneventful. At some point, Plaintiff began to evidence clinical stability. On March 27, 2002, Dr. Pernell prepared a discharge summary for Plaintiff, which recommended a Residential Treatment Program (RTP) level of care. In addition to taking his prescribed medications, the HVC treatment team also recommended that Plaintiff be allowed to participate in various therapeutic activities.

On April 17, 2002, Plaintiff was admitted to the RTP at Huron Valley Correctional Facility (HVM). However, within 24 hours, Plaintiff was removed from RTP and placed in a segregation temporary holding cell. Plaintiff was told that he was required to remain in segregation until his pending misconduct tickets were resolved. On April 23, 2002, Defendant Snider dismissed all charges against Plaintiff, finding that Plaintiff was not responsible for his actions at the time the misconducts were incurred. On the same date, Defendant Watson wrote a Notice of Intent (NOI) to classify Plaintiff to administrative segregation based on the behavior underlying the misconduct tickets. In the hearing report, Defendant Snider stated that Plaintiff reported deteriorating mental health as a result of being confined to administrative segregation. Defendant Snider upheld the NOI at a hearing on April 30, 2002. Plaintiff attaches a copy of the hearing report to his complaint as Exhibit E, which lists the following under "findings of fact and reasons for findings:"

> On 3/2/02 prisoner Gray was locking at JCS. At 0245 hours prisoner Gray walked out of his housing unit without staff authorization and walked to he [sic] JCS Sally Port. Prisoner Gray then began climbing the JCS perimeter fence. JCS staff responded and pulled prisoner Gray off the fence. Prisoner Gray physically resisted staff efforts to pulled [sic] him off the fence and escort him off the JCS Yard. Prisoner Gray did not contacted [sic] the allegations in the notice but argued he was not Mentally responsible for his actions. The Notice is upheld. The Notice is consistent with the supporting documents provided and prisoner Gray's admissions.

Plaintiff contends that Defendants have used their authority to trap Plaintiff in a position where he is being deprived of adequate mental health treatment. Plaintiff states that on April 22, 2002, he was approached by Defendant Doe to discuss voluntary consent to an Out Patient Treatment (OPT) level of care. At that time, Plaintiff had been in segregation for four days and was confused, anxious, and emotionally disturbed. Plaintiff informed Defendant Doe of his fear of isolation. Defendant Doe then produced some papers and indicated that he would like Plaintiff to be transferred from RPT to OPT care. Defendant Doe told Plaintiff that if he signed the papers, he would be transferred out of segregation. Plaintiff asked Defendant Doe's opinion and Defendant Doe stated that he thought Plaintiff should sign the papers. After Plaintiff signed the papers, Defendant Doe told Plaintiff that he would be remaining in segregation.

Following the incident with Defendant Doe, Plaintiff became suspicious of HVM staff and stopped taking his medications, believing that they would only create a dependency for stronger medications. Plaintiff believes that the goal of the Defendants was to classify him to segregation and increase his level of confinement as a means to punish him for his illness. Plaintiff's transfer to OPT was facilitated by the recommendation of Defendant Wemer and the lies of Defendant Doe.

Plaintiff claims that Defendant Snider's decision to uphold the NOI was in violation of MDOC policy because it prohibits hearing officers from making such a decision when the NOI is based on behavior that would amount to a major misconduct violation if the facts were established, but it is believed the evidence is insufficient to support a guilty finding. In addition, Plaintiff states that policy prohibits the hearing officers from upholding a NOI if the notice form contains only facts on which findings were made at a prior misconduct hearing. Plaintiff was kept

in a detention cell for two months for 23 or 24 hours each day. Plaintiff contends that this confinement caused his medical condition to worsen.

Plaintiff alleges that he filed a request for rehearing on the NOI, which was denied by Defendant Stapleton. On June 12, 2002, Plaintiff was transferred from HVM to Marquette Branch Prison (MBP), a level V prison. Plaintiff constantly complained to staff about the negative impact of the conditions at MBP on his medical condition, but was merely told to "deal with it." As a result, Plaintiff suffered another mental breakdown. Plaintiff was transferred to Riverside Correctional Facility (RCF) and was admitted to the RCF Crisis Stabilization Program (CSP) on April 16, 2003. On April 22, 2003, Plaintiff was transferred to HVC, where he remained for one month, after which he was returned to MBP. On August 29, 2004, Plaintiff requested reclassification by the SCC. Plaintiff's request was not granted. Plaintiff forwarded the reclassification request to Defendant Hofbauer on September 13, 2004. Plaintiff received no response from Defendant Hofbauer. Plaintiff filed step I, II and III grievances regarding his classification and the NOI.

Plaintiff wrote a letter to Defendant Straub complaining about his continued confinement in administrative segregation. On October 27, 2004, Assistant Deputy Warden of Security, C. Aalto, responded to Plaintiff's letter. Plaintiff attaches a copy of the memorandum from Aalto to his complaint. In the response, Aalto made the following observations:

> In the attached information you sent to Deputy Director Straub, you bring up some very interesting points that I checked into further. You stated the misconduct for escape for which you believe is keeping you in Level V was dismissed. This is correct. I contacted Central Office and they faxed me the copy of the dismissed 3-7-02 Attempt Escape; Assault and Battery misconduct so I could review it. It is interesting to note the reasons for finding on the major misconduct. Relevantly, the misconduct was adjourned as the

> Hearing Officer requested you be sent to HVC for a mental health evaluation. Dr. Weisner completed a Mental Health evaluation on 4-19-02 and indicated you "did not know right from wrong and was not able to conform his conduct to the rules." He further stated you "were acutely mentally ill on 3-2-02 and not responsible for his actions." The misconduct hearing was then completed on 4-23-02 and was dismissed for the reasons stated above.
>
> This information brings us to the Notice of Intent that was authored on 4-23-02 at HVM. This notice describes your behavior on 3-2-02 when you walked away from your unit to the Sallyport and started climbing the gate. You resisted staff when they tried to pull you off the gate. Due to this type of behavior, the hearing officer supported and upheld the facts that you attempted escape and assaulted staff. You were a risk in general population, thus, the classification to Administrative Segregation.
>
> Interestingly, you claim this violates policy. Policy was not violated in this instance and the Notice of Intent was supported by the Hearing Officer. The primary goal of the Department is the protection of the public. This is carried out through the management of sentenced offenders at the appropriate level of supervision. This requires that staff, regardless of function, be responsible for active, visible participation in the correctional process and for achieving the Department's goals. The escape behavior happened. There is no doubt about that fact. Dr. Wesner [sic] evaluated you and completed a Mental Health evaluation on 4-19-02. His final summary indicated you were acutely mentally ill on 3-2-02 and not responsible for your actions. This gives more credibility to the Notice of Intent relevant to increasing your security to better handle your behavior.

(See October 27, 2004, memorandum from C. Aalto, attached to Plaintiff's complaint as part of Exhibit R.)

Plaintiff contends that Defendants' conduct in keeping him in administrative segregation constitutes a violation of his rights under the Eighth and Fourteenth Amendments. In addition, Plaintiff claims that Defendants have retaliated against him because of his illness. Plaintiff seeks declaratory and injunctive relief, as well as costs.

> II.    Lack of exhaustion of available administrative remedies

Plaintiff has failed to sufficiently allege and show exhaustion of available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 122 S. Ct. 983 (2002); *Booth v. Churner*, 532 U.S. 731, 121 S. Ct. 1819 (2001). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter*, 122 S. Ct. at 984; *Booth*, 532 U.S. at 741,121 S. Ct. at 1824. A district court must enforce the exhaustion requirement sua sponte. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.), *cert. denied*, 525 U.S. 833, 119 S. Ct. 88 (1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, if the decision is available. *Brown*, 139 F.3d at 1104. In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome so that the court may determine what claims, if any, have been exhausted. *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir.), *cert. denied*, 531 U.S. 1040, 121 S. Ct. 634 (2000). A prisoner must specifically mention the involved parties in the grievance to make prison officials aware of the problems so that the prison has a chance to address the claims before they reach federal court. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001).

Plaintiff's claims of improper classification are the type of claims that may be grieved. *See* MICH. DEP'T OF CORR., Policy Directive 05.01.130, ¶ U (effective May 28, 1996). *See*

*also* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ E (may grieve "alleged violations of policy and procedure or unsatisfactory conditions of confinement") (effective Nov. 1, 2000).

The burden to allege and show exhaustion belongs to Plaintiff. *See* 42 U.S.C. § 1997e(a); *Knuckles El*, 215 F.3d at 642; *Brown*, 139 F.3d at 1104. This requirement is "so that the district court may intelligently decide if the issues raised can be decided on the merits." *Knuckles El*, 215 F.3d at 642. Plaintiff attaches to his complaint a copy of a grievance he filed on Defendant Hofbauer on September 18, 2004, and copies of his step II and III appeals. However, it does not appear that Plaintiff filed grievances naming any of the other Defendants in this case. An allegation that remedies have been exhausted is not enough, as a plaintiff must provide the decisions reflecting the administrative disposition of his claims or other evidence showing that he has exhausted his remedies. *Williams v. McGinnis*, No. 98-1042, 1999 WL 183345, at *1 (6th Cir. March 16, 1999). The Sixth Circuit has found that the district court is not required to hold evidentiary hearings on the issue of exhaustion or "spend a lot of time with each case just trying to find out whether it has jurisdiction to reach the merits." *See Knuckles El*, 215 F.3d at 642.

Because Plaintiff has only exhausted his claims against one of the named Defendants, the Court will dismiss his action pursuant to the "total exhaustion" rule. Under the total exhaustion rule, the presence of an unexhausted claim results in the dismissal of the entire action. Currently, a split exists in this District concerning the validity of the "total exhaustion" interpretation of 42 U.S.C. § 1997e(a). *Smeltzer v. Hook*, 235 F. Supp. 2d 736 (W.D. Mich. 2002) (applying total exhaustion rule) (comparing *Keenan v. Twommy*, No. 1:97-cv-549 (W.D. Mich. July 29, 1999) (applying total exhaustion rule) with *Jenkins v. Toombs*, 32 F. Supp. 2d 955 (W.D. Mich. 1999) (rejecting total exhaustion rule). In *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000), *cert.*

*denied* 531 U.S. 1040, 121 S. Ct. 634 (2000), the Sixth Circuit "reserve[d] to another day the question of whether 'exhausted claims' in a 'mixed complaint' should be addressed when such claims would otherwise meet the pleading requirement or whether such claims should be dismissed in their entirety."

In *Smeltzer*, the court noted that the majority of courts that have addressed the issue have applied the total exhaustion rule. 235 F. Supp. 2d at 743. In addition, the court noted that the total exhaustion rule is supported both by the plain meaning of 42 U.S.C. § 1997e(a) and strong policy interests. *Smeltzer*, 235 F. Supp. 2d at 743. Section 1997e(a) provides, "No *action* shall be brought with respect to prison conditions under section 1983 of this title . . . until such administrative remedies as are available are exhausted." 28 U.S.C. § 1997e(a). As noted in *Smeltzer*, Congress indicated that a prisoner is required to exhaust all claims before his action may proceed by using the word "action" instead of "claim." *Smeltzer*, 235 F. Supp. 2d at 744.

As noted by the court in *Smeltzer*, if Congress had intended to permit the piecemeal adjudication of claims relating to prison conditions, the statute would have precluded the bringing of unexhausted *claims* rather than *actions*. 235 F. Supp. 2d at 744 (emphasis in original). Section 1997e(c)(1) provides that the district court shall dismiss any "action" which is frivolous, malicious, or fails to state a claim. In contrast, § 1997e(c)(2) provides that the district court may dismiss a "claim" which is frivolous, malicious or fails to state a claim without first requiring exhaustion of administrative remedies. It is apparent that Congress realized that requiring dismissal without prejudice under § 1997(a) might prevent a court from dismissing with prejudice for frivolousness or failure to state a claim. Therefore, Section 1997e(c)(2) serves to reconcile § 1997(a) and § 1997(e)(1) by permitting a court to dismiss an unexhausted claim as frivolous, thus preventing an

unexhausted claim from 'holding up' the dismissal of a frivolous action comprising otherwise exhausted claims." *Smeltzer*, 235 F. Supp. 2d at 744.

In *Smeltzer*, the court noted that the general intent of the PLRA and other strong policy arguments offer additional support for a total exhaustion rule. As noted by the Eleventh Circuit, Congress amended § 1997e(a) largely in response to concerns about the heavy volume of frivolous prison litigation in the federal courts. *Smeltzer*, 235 F. Supp. 2d at 744 (citing *Alexander v. Hawk*, 159 F.3d 1321, 1326 n.11 (11th Cir. 1998) (citing 141 Cong. Rec. H14078-02, *H14105 (daily ed. Dec. 6, 1995)). "Congress desired 'to wrest control of our prisons from the lawyers and the inmates and return that control to competent administrators appointed to look out for society's interests as well as the legitimate needs of prisoners.'" *Id.* (quoting 141 Cong. Rec. S14408-01, *S14418 (daily ed. Sept. 27, 1995)).

The total exhaustion rule advances the goals of the PLRA by discouraging frivolous prisoner litigation and conserving judicial resources. *Smeltzer*, 235 F. Supp. 2d at 744-45. The total exhaustion rule also discourages prisoners from bringing unexhausted or frivolous claims. If only the unexhausted claims were dismissed from a mixed complaint, there is nothing to deter prisoners from raising unexhausted claims indiscriminately. Moreover, the assessment of a second filing fee after the prisoner has properly exhausted all of his claims also serves as a deterrent against filing unexhausted or frivolous claims. *Smeltzer*, 235 F. Supp. 2d at 745.

In addition, the court in *Smeltzer* held that application of a total exhaustion rule in the civil rights context promotes comity in much the same way as in the habeas corpus context, where the total exhaustion rule is clearly established. 235 F. Supp. 2d at 745. Regarding the

amendments by the PLRA to § 1997e(a), the *Smeltzer* court quoted *Brown v. Toombs*, 139 F.3d at 1103, as follows:

> The new statute has extensive benefits. It recognizes that it is difficult to explain why we require full exhaustion in habeas corpus cases involving life and liberty, but allow direct access in prison cases under § 1983. As Justice Stewart stated in *Preiser v. Rodriguez*, 411 U.S. 475, 491-92, 36 L. Ed. 2d 439, 93 S. Ct. 1827 (1973):
>
>> Since these internal problems of state prisons involve issues so peculiarly within state authority and expertise, the states have an important interest in not being bypassed in the correction of these problems. Moreover, because most potential litigation involving state prisoners arises on a day to day basis, it is most efficient and properly handled by the state administrative bodies and the state courts, which are for the most part, familiar with the grievances of state prisoners and in a better physical and practical position to deal with these grievances.

*Smeltzer*, 235 F. Supp. 2d at 745.

As concluded by the court in *Smeltzer*, the principles of comity require that prison officials have a full opportunity to address claims raised by prisoners before they are brought to federal court. "By requiring total exhaustion, the federal courts not only will promote comity, but also will reap the benefits of 'more focused complaints and more developed evidentiary records.'" *Smeltzer*, 235 F. Supp. 2d at 745 (citing *Rivera v. Whitman*, 161 F. Supp. 2d 337, 343 (D.N.J. 2001).

Moreover, in *Storey v. Hutchinson*, 56 Fed. Appx. 228 (6th Cir. 2003), *cert. denied*, 124 S.Ct. 1042 (2004), the Sixth Circuit affirmed the dismissal of a prisoner civil rights complaint for lack of complete exhaustion of remedies. 56 Fed. Appx. at 229. In *Storey*, the Plaintiff had submitted affidavits that no grievance procedure was available to him, but later recanted and filed documents showing that he had exhausted his available remedies as to some of the many claims he

raised. The district court dismissed the suit pursuant to 42 U.S.C. § 1997e because of Plaintiff's failure to show that he had exhausted all available administrative remedies. *Id.* In affirming the dismissal, the court stated that the PLRA requires a prisoner to exhaust all available administrative remedies before filing a civil rights action in federal court, and that when a prisoner fails to exhaust his administrative remedies before filing his complaint, or only partially exhausts his remedies, dismissal of the complaint is appropriate. *Id.*

Because Plaintiff's complaint contains exhausted claims and unexhausted claims, the Court finds that he failed to exhaust his administrative remedies as required by § 1997e(a).[1] Dismissal of this action without prejudice is appropriate when a prisoner has failed to show that he exhausted available administrative remedies. *See Freeman*, 196 F.3d at 645; *Brown*, 139 F.3d at 1104; *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997). Dismissal for failing to exhaust available administrative remedies does not relieve a plaintiff from payment of the civil action filing fee. *Omar v. Lesza*, No. 97 C 5817, 1997 WL 534361, at *1 (N.D. Ill. Aug. 26, 1997). Accordingly, the Court may dismiss Plaintiff's action without prejudice.

However, the Court need not first require exhaustion of available administrative remedies when the claim may be dismissed because it is, "on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c)(2); *Brown v. Toombs*, 139 F.3d 1102, 1103 (6th Cir.), *cert. denied*, 525 U.S. 833 (1998). Because Plaintiff's complaint fails to state a claim upon

---

[1]It is not clear whether Plaintiff may still grieve his claims. Under the policy of the prison, complaints must be resolved expeditiously, and complaints may be rejected as untimely. *See* Policy Directive 03.02.130, ¶¶ G-3, T, V. The Sixth Circuit held that an inmate cannot claim that "he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations." *Hartsfield*, 199 F.3d at 309 (citing *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir.), *cert. denied*, 522 U.S. 906 (1997)).

which relief may be granted, the court will dismiss the complaint with prejudice without first requiring plaintiff to exhaust any available administrative remedies.

### III. Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993), *cert. denied*, 510 U.S. 1177, 114 S. Ct. 1218 (1994). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2255 (1988); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 811 (1994).

Plaintiff claims that his continued confinement in administrative segregation violates his constitutional rights. In the MDOC, security classifications, from least to most secure, are: Community Status, Levels I, II, III, IV, V, VI, and segregation. MICH. DEP'T OF CORR., Policy Directive 05.01.130, ¶ H (effective May 28, 1996). There are various types of segregation, including administrative segregation and detention. Administrative segregation is the most restrictive and is imposed for institutional security, e.g., when a prisoner poses a serious escape risk. MICH. DEP'T OF CORR., Policy Directive 04.05.120, ¶ D (effective Feb. 21, 2000). Detention, or "punitive segregation" can be imposed as a sanction for committing a major misconduct, if ordered by the hearing officer. *Id.*, ¶ G. If possible, detention is served in a "designated detention cell" rather than

in administrative segregation. *Id.* A prisoner may not remain on detention for a period longer than that ordered by the hearing officer. *Id.* The behavioral adjustment of a prisoner in segregation is reviewed periodically with the prisoner. *Id.*, ¶ WW. Reclassification from administrative segregation occurs only with the approval of the Security Classification Committee. *Id.*, ¶ DDD. If the prisoner committed a serious assault, the approval of the Regional Prison Administrator is also required. *Id.*

Plaintiff contends that he has been placed in administrative segregation in violation of MDOC policy. To determine whether segregation of an inmate from the general prison population involves the deprivation of a liberty interest protected by the due process clause, the court must determine if the segregation imposes an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." *Jones v. Baker*, 155 F.3d 910, 811 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). Under various circumstances, the Sixth Circuit has repeatedly found that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones*, 155 F.3d at 812-23 (two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (inmate serving life sentence was placed in segregation after serving thirty days of detention for misconduct conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir.1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding). Although plaintiff states that his placement in segregation has been "atypical and significant," he merely uses the legal jargon and presents no factual allegations to support his conclusion. The only allegation he presents regarding his

segregation is that it has had a detrimental effect on his mental health because he feels isolated. However, the fact that Plaintiff has a mental illness does not create a liberty interest in his level of incarceration. Plaintiff has failed to make any allegations which establish that his segregation is "atypical and significant." Moreover, a review of the attachments to Plaintiff's complaint reveal that such confinement is warranted by Plaintiff's inability to conform his behavior to institutional rules and expectations. Consequently, the court concludes that no liberty interest is implicated by his placement.

Plaintiff claims that the conditions of his confinement violate the Eighth Amendment because he is being isolated which has led to deterioration of his mental condition. The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-103(1976). To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Restrictions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9(1992) (quoting *Rhodes*, 452 U.S. at 347; *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Although it is clear that Plaintiff was denied certain privileges as a result of his placement in administrative segregation, he does not allege or show that

he was denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Bradley v. Evans*, No. 98-5861, 2000 WL 1277229, at *8 (6th Cir. Aug. 23, 2000), *cert. denied*, 531 U.S. 1023 (2000); *Collmar v. Wilkinson*, No. 97-4374, 1999 WL 623708, at *3 (6th Cir. Aug.11, 1999). Moreover, Plaintiff cannot not bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U. S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Watson v. McClanahan*, No. 99-6124, 2000 WL 922899, at *2 (6th Cir. June 27, 2000); *Benson v. Carlton*, No. 99-6433, 2000 WL 1175609, at *1 (6th Cir. Aug. 9, 2000). As such, Plaintiff fails to state an Eighth Amendment claim against Defendants.

Plaintiff also appears to be claiming that he has been denied certain mental health therapy in violation of his Eighth Amendment rights. The Eighth Amendment requires prison officials to provide medically necessary mental health treatment to inmates. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Government of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at * 2 (6th Cir. April 26, 1985). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk

of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 2004 WL 2792016, at *7 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 2004 WL 2792016, at *6, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. April 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. April 27, 2001; *Jones v. Martin*, No. 00-1522, 2001 WL 223859, at *1 (6th Cir. Feb. 28, 2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at * 4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at * 2 (6th Cir. April 4, 1997).

In this case, Plaintiff concedes that he is being given his prescribed medications and the he has been repeatedly seen by mental health professionals. Plaintiff merely states that because he is confined to administrative segregation, he is unable to participate in certain therapeutic activities, such a group therapy. Therefore, as was the case in *Westlake*, Plaintiff has received some

medical attention and the dispute is over the adequacy of the treatment. As noted above, such a claim does not rise to the level of a constitutional violation.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(b); 42 U.S.C. § 1997e(c).

The court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court dismisses the action, the court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the court will assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   April 26, 2005              /s/ Gordon J. Quist
                                     GORDON J. QUIST
                                     UNITED STATES DISTRICT JUDGE